UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Shane J.,[1]

                 Plaintiff,                       Case No.  23-cv-407 (NEB/LIB)

     v.                               **REPORT AND RECOMMENDATION**

Martin J. O'Malley,
Commissioner of Social Security Administration,

                 Defendant.

Plaintiff, Shane J. (hereinafter "Plaintiff"), seeks judicial review of the decision of the Commissioner of Social Security ("Defendant") denying his application for disability benefits. The matter is before the undersigned United States Magistrate Judge for disposition pursuant to 28 U.S.C. § 636 and Local Rules 7.2(a)(1). This Court has jurisdiction over the claims under 42 U.S.C. § 405(g).

Pursuant to the Federal Supplemental Rules of Civil Procedure which govern actions seeking judicial review of a decision of the Commissioner of Social Security, the present action "is presented for decision by the parties' briefs." Fed. R. Civ. P. Supp. SS Rule 5. Plaintiff filed a brief requesting that the present action be remanded to the Social Security Administration for an immediate award of benefits or in the alternative, remanded for further administrative proceedings. [Docket No. 12]. Defendant filed a brief asking this Court to affirm the underlying decision denying Plaintiff's request for benefits and to dismiss this action. [Docket No. 14].

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in Social Security opinions such as the present Report and Recommendation. Thus, when the Court refers to Plaintiff by his name only his first name and last initial are provided.

For the reasons discussed herein, the undersigned recommends that Plaintiff's request for relief, [Docket No. 12], be **GRANTED in part** and **DENIED in part**, and Defendant's request for relief, [Docket No. 14], be **DENIED**.

## I.  Background

On March 29, 2018, Plaintiff filed an application for supplemental social security income. (Tr. 11, 554–561).[2] Plaintiff alleged that his disability began on March 29, 2018. (Tr. 11, 39). The Commissioner initially denied Plaintiff's claim on August 20, 2018, and again, upon reconsideration, on October 19, 2018. (Tr. 11, 66–159). On November 21, 2018, Plaintiff filed a written request for a hearing before an Administrative Law Judge. (Tr. 11, 217–218).

Administrative Law Judge Jeffrey W. Hart (hereinafter "ALJ") ultimately conducted a video hearing on January 20, 2022, after the hearing was delayed on two separate occasions. (Tr. 11, 35–55). Plaintiff along with an independent vocational expert, Kari Seaver, ("IVE Seaver") testified at the hearing. (Tr. 11, 35–55). At the hearing, Plaintiff was represented by counsel. (Tr. 11, 35–55).

On March 3, 2022, the ALJ issued a decision denying Plaintiff's request for supplemental social security income. (Tr. 8–23). The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 23).

Plaintiff thereafter sought review of the ALJ's decision by the Appeals Council. (Tr. 1–4, 549–550). Subsequently, on December 22, 2022, the Appeals Council denied Plaintiff's request for review. (Tr. 1). As a result, the ALJ's decision became the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481.

---

[2] Throughout this Report and Recommendation, the Court refers to the Administrative Record, [Docket No. 11], by the abbreviation "Tr." Where the Court cites to the Administrative Record, it refers to the page numbers found in the bottom-right corner of the Administrative Record.

On February 16, 2023, Plaintiff filed this action. (Compl. [Docket No. 1]). Thereafter, this matter was presented to the Court for review pursuant to the parties' briefs, [Docket Nos. 12, 14], and the Court took the matter under advisement on the written submissions.

## II. Standards of Review

### A. Administrative Law Judge's Five-Step Analysis

If a claimant's initial application for disability benefits is denied, he may request reconsideration of the decision. 20 C.F.R. §§ 404.907–404.909. A claimant who is dissatisfied with the reconsidered decision may then obtain administrative review by an administrative law judge. 42 U.S.C. § 405(b)(1); 20 C.F.R. § 404.929.

To determine the existence and extent of a claimant's disability, the administrative law judge must follow a five-step sequential analysis. This analysis requires the administrative law judge to make a series of factual findings about the claimant's impairments, residual functional capacity, age, education, and work experience. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992). The Eighth Circuit has described this five-step process as follows:

> The Commissioner of Social Security [through the ALJ] must evaluate: (1) whether the claimant is presently engaged in a substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

Dixon v. Barnhart, 353 F.3d 602, 605 (8th Cir. 2003). The claimant bears the burden under the Social Security Act of proving that he is disabled. See 20 C.F.R. § 404.1512(a); Whitman v. Colvin, 762 F.3d 701, 705 (8th Cir. 2014). Once the claimant has demonstrated he cannot

perform any of his prior, relevant work due to a disability, the burden then shifts to the Commissioner to show that the claimant retains the residual functional capacity ("RFC") to engage in some other substantial, gainful activity. Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005).

### B.  Appeals Council Review

If the claimant is dissatisfied with the ALJ's decision, he may request review by the Appeals Council, although the Appeals Council need not grant that request for review. See 20 C.F.R. §§ 404.967–404.982. The decision of the Appeals Council (or, if the request for review is denied by the Appeals Council, then the decision of the ALJ) is final and binding upon the claimant, unless the matter is appealed to federal court within sixty days after notice of the Appeals Council's action. See 42 U.S.C. § 405(g); 20 C.F.R. § 404.981. In this case, the Appeals Council declined to review the ALJ's decision finding that Plaintiff was not disabled. (Tr. 1).

### C.  Judicial Review

Judicial review of the administrative decision generally proceeds by considering the decision of the ALJ at each of the five steps. Judicial review of the Commissioner's decision to deny disability benefits, however, is constrained to a determination of whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008); Tellez v. Barnhart, 403 F.3d 953, 956 (8th Cir. 2005); Buckner v. Apfel, 213 F.3d 1006, 1012 (8th Cir. 2000). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Buckner, 213 F.3d at 1012 (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)); see Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007).

In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the ALJ. Hilkemeyer v. Barnhart, 380 F.3d 441, 445 (8th Cir. 2004). The possibility that the Court could draw two inconsistent conclusions from the same record does not prevent a particular finding from being supported by substantial evidence. Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994). The Court should not reverse the Commissioner's finding merely because evidence may exist in the administrative record to support the opposite conclusion. Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

After balancing the evidence, if it is possible to reach two inconsistent positions from the evidence and one of those positions represents the Commissioner's decision, the Court must affirm the decision. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992). Thus, the Court will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice.'" Bradley, 528 F.3d at 1115. The decision of the ALJ "is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." Id. "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009) (quotation marks omitted).

## III. Decision Under Review

At step one of the five-step disability evaluation process, the ALJ concluded that Plaintiff had not engage in substantial gainful activity since his amended alleged onset date of March 29, 2018. (Tr. 14). This finding is not in dispute. The Court will refer to the time period between Plaintiff's alleged onset date and the date of the ALJ's decision as "the adjudicated period."

At step two, the ALJ concluded that Plaintiff had "the following severe impairments: bipolar disorder; generalized anxiety disorder; post-traumatic stress disorder (PTSD); substance abuse disorder; and degenerative disc disease." (Tr. 14). Plaintiff does not challenge the findings made by the ALJ at step two.

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 14). Specifically, the ALJ found that Plaintiff did not have any impairment or combination of impairments which met or equaled listings 1.15, 1.16, 12.04, 12.06, and 12.15. (Tr. 14–16). Plaintiff challenges the ALJ's findings at step three.

At step four, the ALJ made the following RFC determination:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he can never climb ladders, ropes, or scaffolds and he can occasionally reach overhead bilaterally. With regard to concentration, persistence and pace, he cannot work in excess of simple, routine, repetitive tasks; the work can involve up to occasional changes in work setting; the work cannot require public interaction; he can have brief and superficial interaction with supervisors/co-workers meaning, the 5th digit of the DOT code is a [sic] "8"; the work cannot require complex decision-making; and the work cannot involve rapid, assembly-line paced work (daily quotas but not hourly quotas).

(Tr. 16). Although Plaintiff does not directly challenge this finding, he implicitly challenges this finding in as much as he argues that the ALJ should have found Plaintiff disabled at step three without need for analysis beyond step three.

In making this RFC determination, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however," the ALJ also concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the ALJ's] decision." (Tr.

17). Although Plaintiff does not directly challenge this credibility determination by the ALJ,[3] Plaintiff implicitly challenges the ALJ's RFC determination based on his argument that the ALJ should have found Plaintiff disabled at step three without need for analysis beyond step three.

Based on his RFC determination and relying on the testimony from the independent vocational expert, IVE Seaver, the ALJ determined that Plaintiff was unable to perform his past relevant work. (Tr. 21). Plaintiff does not directly challenge this finding by the ALJ.

At step five, the ALJ found that there were other jobs that existed in significant numbers in the national economy which Plaintiff could perform. (Tr. 22–23). Here again relying upon testimony from the independent vocational expert, IVE Seaver, the ALJ specifically found that among the occupations Plaintiff would be able to perform were "hand packager" of which there are 159,000 positions in the national economy; "assembler" of which there are 99,000 positions in the national economy; and "sorter" of which there are 60,000 positions in the national economy. (Tr. 22). Although Plaintiff does not directly challenge this finding, Plaintiff again implicitly challenges this finding based on his argument regarding step three of the sequential analysis.

Based on his finding at each of the steps of the sequential analysis, the ALJ concluded that Plaintiff was not under a disability, as that term is defined by the Social Security Act, at any time during the adjudicated period. (Tr. 23).

---

[3] "Social Security Ruling 16-3p eliminates the use of the term 'credibility' and clarifies that the Commissioner's review of subjective assertions of the severity of symptoms is not an examination of a claimant's character, but rather, is an examination for the level of consistency between subjective assertions and the balance of the record as a whole." Noerper v. Saul, 964 F.3d 738, 745 n.3 (8th Cir. 2020). SSR 16-3p applies to the present case, "but it largely changes terminology rather than the substantive analysis to be applied," and in discussing said determination, Courts have continued to use the "credibility" terminology. Noerper v. Saul, 964 F.3d 738, 745 n.3 (8th Cir. 2020).

**IV. Analysis**

Plaintiff asserts one argument in his appeal of the ALJ's decision: At step three of the sequential analysis, the ALJ's decision that Plaintiff's impairments did not meet or equal a presumptively disabling impairment listed in the regulations was not supported by substantial evidence. (Plf.'s Mem. [Docket No. 12] at 8–11). Specifically, Plaintiff argues that the ALJ's determination at step three of the sequential analysis is not supported by substantial evidence because the ALJ's consideration of the paragraph C criteria of Listing 12.04 and Listing 12.06 failed to account for the structured setting in which Plaintiff lived and the support he received from his mother in all areas of daily functioning. (See Id.).

The Commissioner contends that the ALJ's decision is supported by substantial evidence. (Def.'s Mem. [Docket No. 14]). Regarding the ALJ's finding at step three of the sequential analysis, Defendant contends that Plaintiff's argument is unavailing because Plaintiff "has failed to satisfy his burden of proof to establish that his mental impairments met or equaled a listing." (Def.'s Mem. [Docket No. 14] at 8–9). Defendant's assertion, however, misses the point of Plaintiff's argument which is not that the ALJ misconstrued the evidence and should have concluded that the evidence supported finding Plaintiff's impairments met or equaled a particular listing. Instead, Plaintiff's argument is that the ALJ's consideration of the evidence in making his determination at step three of the sequential analysis failed to account for the structure setting in which Plaintiff lived during the adjudication period and the support he received from his mother in performing the functions of daily living.

At step three of the sequential analysis, the ALJ is required to determine whether the claimant has an impairment or combination of impairments that meets or equals a presumptively disabling impairment listed in the regulations. Dixon v. Barnhart, 353 F.3d 602, 605 (8th Cir.

2003). If the ALJ determines that the claimant's impairment meets or equals an impairment listed in the regulations, then the claimant is conclusively presumed disabled without the need for further analysis. <u>Fines v. Apfel</u>, 149 F.3d 893, 895 (8th Cir. 1998); <u>McKinney v. Colvin</u>, 973 F. Supp. 2d 1011, 1023 (E.D. Mo. 2013) (citing <u>Warren v. Shalala</u>, 29 F.3d 1287, 1290 (8th Cir. 1994)).

To establish that an impairment or combination of impairments meets or equals a presumptively disabling impairment listed in the regulations, a claimant must establish that all of the listing's specified criteria are met. <u>See</u> <u>Johnson v. Barnhart</u>, 390 F.3d 1067, 1070 (8th Cir. 2004). If an impairment satisfies only some of the criteria, the impairment does not qualify as a presumptively disabling impairment regardless of the impairment's severity. <u>Id.</u>

As with any determination made by the ALJ in reviewing a claimant's application for benefits, the ALJ has a duty to sufficiently develop the record to permit meaningful review on appeal when making a determination at step three of the sequential analysis. <u>See</u> <u>Noerper v. Saul</u>, 964 F.3d 738, 747 (8th Cir. 2020). This duty to develop the record "arises from the simple fact that the disability determination process is not an adversarial process," and thus, the duty to develop the record "exists alongside the claimant's burden to prove [his] case." <u>Id.</u> If an ALJ fails to identify the evidence relied upon in support of a decision, the Court cannot determine if the ALJ's decision is supported by substantial evidence "because the Court has no way of knowing which evidence to review." <u>Holdeman v. Kijakazi</u>, No. 20-cv-729 (NKL), 2021 WL 6062368, at *6 (W.D. Mo. Dec. 22, 2021); <u>see, e.g.</u>, <u>Noerper</u>, 964 F.3d at 747; <u>Dianna L.B. v. Saul</u>, 19-cv-2561 (TNL), 2020 WL 4586822, at *5 (D. Minn. Aug. 10, 2020). Similarly, if an ALJ fails to sufficiently explain a specific determination, the Court lacks a basis upon which to decide whether the ALJ's specific determination is supported by substantial evidence. <u>See</u> <u>Jason</u>

H. v. O'Malley, No. 23-cv-743 (WMW/LIB), 2024 WL 689594, at *7 (D. Minn. Jan. 4, 2024),

report and recommendation adopted, 2024 WL 471645 (D. Minn. Feb. 7, 2024).

Relevant to the present case are the listings found at 12.04 ("Listing 12.04") and 12.06 ("Listing 12.06"). Listing 12.04 encompasses depressive, bipolar, and related disorders. 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(A)(1). Listing 12.06 is comprised of anxiety and obsessive-compulsive disorders. Id. Listing 12.04 and Listing 12.06 "have three paragraphs, designated A, B, and C." Id. § 12.00(A)(2). To satisfy the requirements of Listing 12.04 or Listing 12.06, the claimant's mental disorder must satisfy the requirements of both paragraph A and paragraph B of the respective listing, or the requirements of both paragraph A and paragraph C of the respective listing. Id.

Paragraph A of Listing 12.04 and Listing 12.06 "includes the medical criteria that must be present in [the claimant's] medical evidence." Id. § 12.00(A)(2)(a). Paragraph A of Listing 12.04 requires medical documentation of a depressive disorder or a bipolar disorder. Id. § 12.04(A). Paragraph A of Listing 12.06 requires medical documentation of an anxiety disorder, a panic disorder, agoraphobia, or obsessive-compulsive disorder. Id. § 12.06(A).

Paragraph B of Listing 12.04 and Listing 12.06 are identical. Compare Id. § 12.04(B) with Id. § 12.06(B). In both Listings, Paragraph B requires "[e]xtreme limitation of one, or marked limitation of two, of the following areas of mental functioning:" understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. See Id. §§ 12.04(B), 12.06(B).

Paragraph C of Listing 12.04 and Listing 12.06 are also identical. Compare Id. § 12.04(C) with Id. § 12.06(C). In each Listing, Paragraph C requires that the claimant's relevant mental disorder be "'serious and persistent; that is, [claimant has] a medically documented

history of the existence of the disorder over a period of at least 2 years, and there is evidence of

both:"

> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly
> structured setting(s) that is ongoing and that diminishes the symptoms and signs
> of [claimant's] mental disorder (see 12.00G2b); and
> 2. Marginal adjustment, that is, [claimant has] minimal capacity to adapt to
> changes in [claimant's] environment or to demands that are not already part of
> [claimant's] daily life (see 12.00G2c).

See Id. §§ 12.04(C), 12.06(C).[4]

In considering whether a claimant has satisfied the various criteria in Listing 12.04 or

Listing 12.06, an ALJ is required to assess the claimant's "ability to complete tasks by evaluating

all the evidence, . . . with an emphasis on how independently, appropriately, and effectively" the

claimant is "able to complete tasks on a sustained basis." Id. § 12.00(C)(6)(c). An ALJ is also

required to "consider the kind and extent of supports" the claimant receives, "the characteristics

of any structured setting in which" the claimant spends his "time, and the effects of any

treatment." Id. § 12.00(D)(1). A type of support the ALJ is required to consider include "help

from family members or other people who monitor [the claimant's] daily activities and help [the

claimant] function." Id. § 12.00(D)(1)(a). Another type of support which must be considered by

an ALJ is a circumstance in which although the claimant lives "alone and does not receive any

psychosocial support(s)," the claimant has "created a highly structured environment by

eliminating all but minimally necessary contact with the world outside [claimant's] living

space." Id. § 12.00(D)(1)(g).

---

[4] The criteria in Listing 12.04(C)(1) and Listing 12.06(C)(1) are satisfied when the evidence shows that the claimant relies, "on an ongoing basis, upon medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s), to diminish the symptoms and signs of" the claimant's "mental disorder." Id. § 12.00(G)(2)(b). The criteria in Listing 12.04(C)(2) and Listing 12.06(C)(2) are "satisfied when the evidence shows that, despite [the claimant's] diminished symptoms and signs," the claimant has "achieved only marginal adjustment," meaning the claimant's "adaptation to the requirements of daily life is fragile; that is," the claimant has "minimal capacity to adapt to changes in [the claimant's] environment or to demands that are not already part of [the claimant's] daily life." Id. §§ 12.00(G)(2)(c).

An ALJ is required to consider the type and extent of support a claimant receives, including the existence of a structured setting, because "[p]articipation in activities with family or activities at home and at 'your own pace' may not reflect an ability to perform at work." Nowling v. Colvin, 813 F.3d 1110, 1122 (8th Cir. 2016).[5] Moreover, in considering the support a claimant receives, the ALJ must be mindful that "mental impairments can wax and wane." Hughes v. Kijakazi, No. 22-cv-5070 (DW), 2023 WL 6234104, at *18 (D.S.D. Sept. 26, 2023) (quoting Wellman v. Berryhill, No. 16-cv-4159 (LLP), 2017 WL 5990116, at *28 (D.S.D. Nov. 9, 2017), report and recommendation adopted, 2017 WL 5992311 (D.S.D. Dec. 1, 2017)); see Nowling, 813 F.3d at 1121–123. If an improvement in a claimant's symptomology coincides with the claimant's receipt of significant support or the claimant living within a structure setting, then such improvement is not indicative of a lack of disabling impairment because the ALJ must consider the claimant's symptomology and ability to function outside of the structure setting. See Nowling, 813 F.3d at 1121–123; Hughes, 2023 WL 6234104, at *17–18; 20 C.F.R. § Pt. 404, Subpt. P, App. 1 §§ 12.00(D), 12.00(F)(1), 12.00(F)(3)(e); Lillard v. Berryhill, 376 F. Supp. 3d 963, 983–84 (E.D. Mo. 2019) ("When individuals with mental illness have their lives structured to minimize stress and reduce their signs and symptoms, they 'may be much more impaired for work than their signs and symptoms would indicate.'") (quoting Andler v. Chater, 100 F.3d 1389, 1393 (8th Cir. 1996)).

---

[5] Although Nowling involved reviewing an ALJ's evaluation of the plaintiff's daily activities for the purposes of making a residual functional capacity determination, Nowling's rationale applies equally to any decision by an ALJ which involves the consideration of a plaintiff's symptoms, including an ALJ's review of a plaintiff's symptoms and impairments at step three of the sequential analysis. See Id. at 1122 n.8; Loriel H. v. Kijakazi, No. 8:21-cv-196, 2022 WL 684400, at *27 (D. Neb. Mar. 8, 2022) (applying Nowling to the ALJ's conclusions regarding credibility of plaintiff's subjective complaints); Lindsay S. v. Kijakazi, No. 21-cv-05078 (DW), 2023 WL 2647024, at *9–11 (D.S.D. Mar. 27, 2023) (applying Nowling's rationale to ALJ's credibility determination and the ALJ's evaluation of the Paragraph B criteria); Lillard v. Berryhill, 376 F. Supp. 3d 963, 983–84 (E.D. Mo. 2019); 20 C.F.R. § Pt. 404, Subpt. P, App. 1, §§ 12.00(D), 12.00(E)(3)(e).

In the present case, the ALJ did not specifically discuss whether Plaintiff's impairments satisfied Paragraph A of Listing 12.04 or Listing 12.06. (See Tr. 11–23). Nevertheless, the record patently demonstrates that Plaintiff meets the requirements of Paragraph A for Listing 12.04 and Listing 12.06. The ALJ's finding that Plaintiff suffered the severe impairment of bipolar disorder satisfies the criteria of Paragraph A in Listing 12.04, and Plaintiff's severe impairment of generalized anxiety disorder satisfies the criteria of Paragraph A in Listing 12.06. In fact, although the AJL did not specifically discuss Paragraph A, the ALJ's opinion appears to simply assume that the Paragraph A requirements are met. (See Tr. 15–16) (discussing whether the Paragraph B criteria and Paragraph C criteria had been satisfied which would be an unnecessary discussion if the requirements of Paragraph A were not met).

The ALJ's discussion of whether Plaintiff's mental impairments satisfied the Paragraph B criteria of Listing 12.04 and Listing 12.06 concluded that Plaintiff's mental impairment, whether considered alone or in combination, did not satisfy the requirements of Paragraph B of either Listing. (Tr. 15–16).[6] In the area of understanding, remembering, or applying information, the ALJ concluded that Plaintiff had "mild" limitations. (Tr. 15). In the areas of interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself, the ALJ determined that Plaintiff had "moderate" limitations. (Tr. 15).

The ALJ also concluded that Plaintiff's mental impairment did not satisfy the requirements of Paragraph C; however, the ALJ's discussion of Paragraph C is wholly conclusory. (See Tr. 16). The entirety of the ALJ's discussion of Paragraph C is as follows:

> I have also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria.

---

[6] Plaintiff does not directly challenge the ALJ's finding regarding the Paragraph B criteria. Nevertheless, the ALJ's findings regarding Paragraph B are include here for context because Defendant argues that the ALJ's discussion of the Paragraph B criteria represents substantial evidence in support of the ALJ's decision regarding the Paragraph C criteria.

Paragraph C of Listings 12.04, 12.06 and 12.15 requires a medically documented history of the existence of the disorder over a period of at least two years along with medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting that is ongoing and that diminishes the symptoms and signs of the mental disorder as well as minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life.

(Tr. 16). Nevertheless, the ALJ's failure to elaborate on his conclusion about the criteria of Paragraph C is not reversible error if the ALJ's earlier discussion of the Paragraph B criteria overall represents substantial evidence in support of his conclusion regarding Paragraph C. See H.S. v. Kijakazi, No. 20-cv-1553 (SRN/HB), 2022 WL 409954, at *10 (D. Minn. Jan. 24, 2022), report and recommendation adopted, 2022 WL 409951 (D. Minn. Feb. 10, 2022).

In the present case, the ALJ's decision regarding whether Plaintiff met the requirements of the Paragraph C criteria is not supported by substantial evidence in the record because even considering the ALJ's discussion of the Paragraph B criteria and the Paragraph C criteria as a whole, the ALJ failed to consider the structured setting within which Plaintiff functions or the assistance Plaintiff receives to help alleviate his symptoms. See 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(D); Nowling v. Colvin, 813 F.3d 1110, 1121–123 (8th Cir. 2016); Hughes, 2023 WL 6234104, at *18. In fact, the ALJ's discussion at step three of the sequential analysis lacks any indication that Plaintiff lives in a structured setting or that he is assisted in all activities of daily living by either his mother, or in her limited absence, by his caseworker. (See Tr. 15–16).[7] The ALJ's failure to consider the type and extent of support Plaintiff receives; the characteristics of the structured setting in which Plaintiff spends his time; and the effect of this support and structure on the signs and symptoms of Plaintiff's impairments represents error requiring remand. See Nowling v. Colvin, 813 F.3d 1110, 1121–123 (8th Cir. 2016).

---

[7] Although later in his opinion the ALJ acknowledged that Plaintiff had testified that he lived in a "group home" and that either Plaintiff's mother or his caseworker took him to the grocery store, the ALJ's opinion lacks any discussion of how these circumstances affected Plaintiff's ability to function. (See Tr. 11–23).

On the record now before the Court, the circumstances of Plaintiff's living situation and daily functioning contained the type of support and structured setting designed to help Plaintiff "by reducing the demands made on" him as contemplated in 20 C.F.R. § Pt. 404, Subpart P, App. 1 § 12.00(D). Specifically, the record demonstrates that Plaintiff received the type of support described in § 12.00(D)(1)(a), and Plaintiff lived in the type of structured environment described by § 12.00(D)(1)(g).

As the record relates to § 12.00(D)(1)(a), the record demonstrates that when Plaintiff was outside the company of his mother, he isolated himself in his room to "eliminat[e] all but minimally necessary contact with the world outside [his] living space." From at least July 20, 2018, through the date of the ALJ's decision, Plaintiff lived in a "group home" setting. (See, e.g., Tr. 40–45, 1261). Plaintiff's "group home" was a house with nine total occupants each having a separate, private room with shared communal living space available, although there was not a staff person at the house. (Tr. 40–45). Plaintiff testified at the administrative hearing that he remained isolated in his room avoiding interaction with the house's other occupants. (Tr. 40–45). Throughout the adjudicated period, Plaintiff consistently reported to his medical providers that he self isolated in his private room to avoid interaction. (See Tr. 632, 965, 1076, 1130, 1157, 1266, 1279, 1286, 1301). Plaintiff also reported that he isolated into his room without leaving the house unless his mother, or in her limited absence his caseworker, could accompany him. (Tr. 1301). He further noted that even when he was accompanied, he did not leave his home other than for medical appointments and visiting the grocery store. (Tr. 41–42, 609, 632, 1301).[8]

---

[8] At the administrative hearing, Plaintiff described an incident in which he was unable to force himself to leave his house to attend a surgery which had been scheduled to correct a zygomatic arch fracture of his eye socket. (Tr. 46). The surgery was rescheduled, and he was able to attend with his mother's assistance. (Tr. 46). Plaintiff appears to have been accompanied to all of his medical appointments during the adjudicated period. (See Tr. 610).

As the record relates to § 12.00(D)(1)(g), the record shows that Plaintiff received significant help from his mother in "monitor[ing] [his] daily activities and help[ing] [him] function." Throughout the adjudicated period, Plaintiff's mother performed the majority of his functions of daily living with the limited exception that he "wash[ed] dishes after using them" and occasionally microwaved food (Tr. 1050; see Tr. 608–609, 632).[9] At a consultive examination on August 6, 2018, Plaintiff reported that he did not make his bed, dust, vacuum, or clean; instead, his mother performed these tasks for Plaintiff. (Tr. 1050). He further reported that he bathes ever four days unless reminded more frequently. (Tr. 1050; see Tr. 632). Plaintiff made similar reports in a May 20, 2018, Function Report in which he reported that his mother did all of his "household chores" and that all the meals he prepared were frozen meals. (Tr. 608). He further reported that his mother is the only person with which he socialized. (Tr. 610). Moreover, at the administrative hearing, Plaintiff testified that he was unable to "stay up too much on [his] hygiene" without his mother's assistance. (Tr. 42).

On the record now before the Court, it is patently evident that Plaintiff received the type of assistance and lived in the type of structured setting contemplated by § 12.00(D)(1). The ALJ was therefore required to consider the effect of this support and structure on the signs and symptoms of Plaintiff's impairments when the ALJ was determining whether Plaintiff's impairments met or equaled Listing 12.04 or Listing 12.06. See § 12.00(D)(1). However, there is no indication in the record that the ALJ considered this support and structure. This represents reversible error. See Lillard, 376 F. Supp. 3d at 984; Cook v. Kijakazi, No. 4:21-cv-440 (WJE), 2022 WL 1014954, at *3 (W.D. Mo. Apr. 5, 2022); Nowling, 813 F.3d at 1122.

---

[9] Although Plaintiff's mother lived at her own residence thereby leaving Plaintiff without her presences for periods of time, "one can have a highly structured life and be left alone for stretches of time." Lindsay S. v. Kijakazi, No. 21-cv-5078 (DW), 2023 WL 2647024, at *9 (D.S.D. Mar. 27, 2023). This appears especially true in circumstances like the present case in which Plaintiff isolated when he was left alone.

An examination of the ALJ's discussion regarding whether Plaintiff's impairment met or equaled the Paragraph B criteria of Listing 12.04 or Listing 12.06 is illustrative of why it is reversible error for the ALJ to fail to consider the support Plaintiff received or the structured setting in which Plaintiff lived. For instance, in the area of understanding, remembering, and applying information the ALJ concluded that Plaintiff had "mild" limitations because some treatment notes indicated that Plaintiff had "regular display of adequate recent and remote memory," and in the mental functioning area of concentrating, persisting, or maintaining pace, the ALJ concluded that Plaintiff had "moderate" limitations because he "successfully performed serial 7 subtractions" and "was regularly noted to have good attention and concentration." (Tr. 15). However, on the record now before the Court, the ALJ failed to consider, or even acknowledge, that at the time of each of the records the ALJ cited in support of these conclusions, Plaintiff was living in a structured setting, receiving substantial assistance from his mother in all areas of daily living, and isolating in his room when his mother was not present. (See Tr. 1070, 1262, 1269, 1288, 1302, 1685).

The same is true of the ALJ's finding, regarding the other areas of mental functioning in Paragraph B. In the mental functioning area of interacting with others, the ALJ concluded that Plaintiff had "moderate" limitations because Plaintiff "was regularly noted to have cooperative attitude and good eye contact." And in the area of adapting or managing oneself, the ALJ concluded that Plaintiff had "moderate" limitations because he "regularly presented with linear, logical, and goal directed thought process, intact associations, full orientation, good insight, and adequate to intact judgment." (Tr. 15). However, here again, the ALJ failed to even acknowledge that in all but one of the examples he cited in support of these observations, Plaintiff was living in a structured environment, receiving substantial assistance from his mother in all areas of daily

living, and isolating in his room when his mother was not there. (See 963, 1050, 1070, 1074, 1262, 1629, 1288, 1302, 1685).

In summation, even assuming solely for the sake of argument that the ALJ intended to incorporate his Paragraph B discussion into his consideration of the Paragraph C criteria, the ALJ failed to consider the extent to which the support and structure enjoyed by Plaintiff affected his stress and symptoms while he was within that structured setting and receiving such support. "When individuals with mental illness have their lives structured to minimize stress and reduce their signs and symptoms, they 'may be much more impaired for work than their signs and symptoms would indicate.'" Lillard v. Berryhill, 376 F. Supp. 3d 963, 983–84 (E.D. Mo. 2019) (citing Andler v. Chater, 100 F.3d 1389, 1393 (8th Cir. 1996)).[10]

For all the reasons discussed above, the Court finds that the ALJ's decision at step three regarding whether Plaintiff met or equaled Listing 12.04 or Listing 12.06 is not supported by substantial evidence. Specifically, the ALJ failed to consider the extent to which structured settings and support in all areas of daily functioning affected Plaintiff's ability to function in the workplace, i.e., outside of the structured setting and without substantial support in areas of daily functioning. This represents reversible error by the ALJ. Lillard, 376 F. Supp. 3d at 984; Cook, 2022 WL 1014954, at *3; Nowling, 813 F.3d at 1122.

Notably, this is not a circumstance in which Plaintiff highlights different portions of the same records reviewed by the ALJ and asks this Court to reweigh the evidence in Plaintiff's favor as it relates to whether he met or equaled Listing 12.04 and Listing 12.06. Nor is this a case where the Court seeks to impose its own judgment or findings of fact for that of the ALJ as if the

---

[10] This is especially true in circumstances, like the present case, where all of the observations highlighted by the ALJ occurred in the controlled environment of a doctor's office. Courts have observed that the interactions of a claimant at a doctor's office—when considered for the purposes of determining whether a claimant's mental impairments satisfies the criteria of a particular listing—are interactions taking place in a "highly structured" setting. Lindsay S., 2023 WL 2647024, at *11.

Court had been the initial fact finder. Importantly, the Court does not here conclude that reversal is appropriate because Plaintiff met or equaled Listing 12.04 or Listing 12.06.[11] Instead, reversal of the ALJ's opinion is appropriate in the present case because the ALJ, in his consideration of whether Plaintiff met or equaled Listing 12.04 and Listing 12.06, failed to consider the extent to which structured settings and support in all areas of daily functioning affected the presentation of the signs and symptoms of Plaintiff's impairments.[12]

The decision remains, however, for the undersigned to determine whether to recommend remanding the present case to the Social Security Administration for the entry of an award of benefits or to recommend remanding to the Social Security Administration for further administrative proceedings.

After determining that the Commissioner's decision is not supported by substantial evidence, a reviewing court can reverse and immediately award benefits "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." Faucher v. Sec'y of Health & Human Servs., 17 F.3d 171, 176 (6th Cir. 1994); see, e.g., Jason H. v. O'Malley, No. 23-cv-743 (WMW/LIB), 2024 WL 689594, at *8 (D. Minn. Jan. 4, 2024) (collecting cases), report and recommendation adopted, 2024 WL 471645 (D. Minn.

---

[11] The Court notes, however, that Plaintiff receiving support from his mother in all areas of daily functioning and living in a structured environment for the overwhelming majority of the adjudicated period, including at the time of all the examples cited by the ALJ in his discussion at step three, could satisfy the criteria of Paragraph C of Listing 12.04 and Listing 12.06. Cook, 2022 WL 1014954, at *3 (citing Myers v. Colvin, 721 F.3d 521, 526 (8th Cir. 2013)).

[12] The Court recognizes that it is hypothetically possible that the ALJ considered the structured settings and the support Plaintiff received in the areas of daily functioning but concluded that neither the structured settings nor the support received was sufficient to affect Plaintiff's presentation of symptoms or his ability to function in a work setting. However, even assuming solely for the sake of argument that the ALJ made such a consideration, remand is still appropriate because the ALJ failed to articulate an explanation for his hypothetical decision. See, e.g., Noerper v. Saul, 964 F.3d 738, 747 (8th Cir. 2020); Dianna L.B. v. Saul, 19-cv-2561 (TNL), 2020 WL 4586822, at *5 (D. Minn. Aug. 10, 2020). If the ALJ made any decision on such hypothetical basis, the ALJ is required to sufficiently articulate that decision and highlight the evidence in the record upon which he relied. See, e.g., Noerper, 964 F.3d at 747; Dianna L.B., 2020 WL 4586822, at *5; Holdeman v. Kijakazi, No. 20-cv-729 (NKL), 2021 WL 6062368, at *6 (W.D. Mo. Dec. 22, 2021); Christine F. v. Kijakazi, No. 21-cv-2048 (NEB/LIB), 2022 WL 3648674, at *5 (D. Minn. July 27, 2022), report and recommendation adopted, 2022 WL 3647808 (D. Minn. Aug. 24, 2022). Without this information, the Court cannot conduct a meaningful review of the ALJ's hypothetical decision.

Feb. 7, 2024). "A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." Faucher, 17 F.3d at 176. Where there is conflicting evidence in the record, the Court should remand the case back to the Commissioner for further consideration consistent with the Court's finding. See Faucher, 17 F.3d at 176.

While it is possible that Plaintiff here will ultimately be entitled to benefits, on the present record, this Court cannot say that such a determination can be made as a matter of undisputed fact. Consequently, the Court declines to recommend remand for an immediate award of benefits. Instead, the Court recommends the present case be remanded to the Commissioner so that a determination may be made in a manner consistent with this recommendation and on the medical evidence in the record. Although there is evidence in the record suggesting that Plaintiff is entitled to an award of benefits, there is also evidence to the contrary, and the evidence in support of Plaintiff being awarded benefits cannot be said to be so overwhelming as to permit the Court to make a determinative award of benefits at this time. The appropriate course of action in the present case is to recommend remanding the present case to the Social Security Administration for further administrative proceedings consistent with this Report and Recommendation.

Therefore, to the extent Plaintiff seeks remand for an immediate award of benefits, the undersigned recommends that Plaintiff's request be **DENIED**. To the extent Plaintiff seeks an Order of this Court reversing the ALJ's decision and remanding this action back to the Social Security Administration for further administrative proceedings consistent with this opinion, the undersigned recommends that Plaintiff's request be **GRANTED**.

## V. Conclusion

Therefore, based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Plaintiff's request for relief, [Docket No. 12], be **GRANTED in part** and **DENIED in part**, as set forth above;

2. Defendant's request for relief, [Docket No. 14], be **DENIED**; and

3. The above captioned matter be **REMANDED** to the Social Security Administration, pursuant to sentence four of 42 U.S.C. § 405(g), for further administrative proceedings consistent with this Report and Recommendation.

Dated:  July 29, 2024                                    s/Leo I. Brisbois
                                                         Hon. Leo I. Brisbois
                                                         United States Magistrate Judge

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).